487 P.2d 1288

**John DAWSON, for himself, and as the representative of the 470 North Property Owners' Association, and all other interested persons, Plaintiffs and Appellants,**

v.

**Morris F. SWAPP et al., Defendants and Respondents.**

No. 12250.

Supreme Court of Utah.

Aug. 6, 1971.

Richard J. Maughan, Salt Lake City, for plaintiffs-appellants.

Jones, Waldo, Holbrook & McDonough, H. R. Waldo, Jr., and Roger J. McDon-ough, Rendell N. Mabey, Salt Lake City, for defendants-respondents.

CALLISTER, Chief Justice:

Plaintiffs initiated this action to challenge the jurisdiction of the governing body of Bountiful City to proceed with the creation of Special Improvement District No. 9. The trial court held that all proceedings taken to date by the defendants in the creation of the district were valid and complied in all respects with the relevant statutory and constitutional provisions and that defendants were entitled to proceed with the organization and creation of the district. Plaintiffs' action was dismissed with prejudice.

The plaintiffs are residents and/or property owners both within and without the proposed boundaries of the special improvement district in the City of Bountiful. On May 11, 1970, the Mayor and Councilmen adopted a resolution to create Special Improvement District No. 9. The Notice of Intention described the improvements as consisting of the necessary grading and construction or reconstruction of curbs, gutters, driveways, sidewalks, and other appurtenant facilities and works.

The factual basis upon which plaintiffs' cause was grounded was that the City did not own a significant portion of the property upon which the improvements were to be constructed, and the notice of intention did

not mention, generally or specifically, the acquisition of this property or the costs thereof. Consequently, the governing body lacked authority to proceed because the notice was invalid for failure to comply with the mandatory requirements of Sec. 10–16–5(1), (a) (d), (e), U.C.A.1953, as amended 1969. Subsection (a) requires that the notice state the purpose for which the assessments are to be levied. Subsection (d) requires a description, in a general way, indicating the nature and the location of the improvements. Subsection (e) requires a statement of the estimated cost of the improvement as determined by the engineer of the municipality. However, this section further provides that if the actual costs exceed the estimated costs, the governing body shall nevertheless have the right to levy assessments in excess of the estimated costs.

Based on the aforementioned provisions, plaintiff asserted that the notice of intention was deceptive and misleading in that no reasonable estimation of the cost appears therein and the notice does not reasonably describe the improvements or location. Furthermore, if the costs of acquisition are to be paid by means of the special assessment, such information should have been included in the notice. Plaintiffs further claimed that the asserted deficiencies in the notice of intention constituted a denial of due process of law.

The trial court found that the notice of intention and its publication fully complied with the statutory requirements and that sufficient notice was furnished to all interested persons of the intention to create the district and the improvements intended to be made. The total protests filed represented less than 50 per cent of the property owners within the district and less than 50 per cent of the property to be assessed computed according to frontage. The trial court found that on June 15, 1970, the City Council met in a public meeting to consider the protests that had been filed and to hear objections. On the same date, plaintiffs obtained an extraordinary writ restraining defendants from creating the district until further order of the court. The finding of major significance stated:

While the City may have to acquire some rights of way by purchase or condemnation in order to complete the proposed improvements, whether the City will have to acquire such rights of way and the amounts, if any, which the City will have to pay for any such rights of way have not been established by the plaintiffs and are not proper subjects to be determined in this action.

The trial court further found that there was no deliberate misrepresentation by the City Engineer or any of the defendants with respect to the estimated costs of the improvements contained in the Notice of In-

tention; defendants have at all times acted in good faith in the proceedings to create the district. Plaintiffs have suffered no money damages as a result of any acts of the defendants.

The trial court dismissed plaintiffs' complaint and dissolved the extraordinary writ previously issued.

In order to comprehend the decision of the trial court, the mechanics of the Municipal Improvement District Act, Secs. 10–16–1 through 40, U.C.A.1953, as amended 1969, should be reviewed. The procedure is initiated by the local governing body giving notice of an intention to make improvements and to levy assessments to pay all or part of the costs thereof. Sec. 10–16–5(1) designates the matters which must be included in the notice of intention. Sec. 10–16–6 specifies the publication requirements. Sec. 10–16–7 provides for the filing of protests by the owners of property to be assessed within the special improvement district, the necessity of a public hearing to consider the protests, and the veto power of protests representing two thirds of the property to be assessed. If less than the necessary protests are filed, the governing body has jurisdiction to create the district and to proceed to make the improvements. (It was at this stage of the procedure that plaintiffs challenged defendants' jurisdic-

tion.) Sec. 10–16–8 provides the method to contract for the improvements.

Sec. 10–16–12 provides:

Assessments for improvements in a special improvement district may be levied:

(1) At any time after all contracts for the making of the improvements have been let, the property price for all property acquired to make the improvements has been finally determined and the reasonable cost of any work to be done by the municipality has been determined; or

\* \* \* \* \* \*

(3) At any time after all of the improvements in the special improvement district are entirely completed and accepted.

Sec. 10–16–17 provides the procedure that must be followed before an assessment is levied, included therein is a notice requirement and mandatory hearings by a board of equalization and review. Significantly, subsection (6) of this statute provides:

Every person whose property is subject to assessment and who fails to appear before the board of equalization and review to raise his objections to the levy of the assessment shall be deemed to have waived all objections to the levy *except the objection that the governing body failed to obtain jurisdiction to order the making of the improvements which the*

*assessment is intended to pay.* [Emphasis added.]

Sec. 10–16–28 provides:

(1) No assessment or proceeding in a special improvement district shall be declared void or set aside in whole or in part in consequence of any error or irregularity which does not go to the equity or justice of the assessment or the proceeding. However, any party feeling aggrieved by an assessment or proceeding and who has not waived his objections thereto as provided in section 10–16–7 or 10–16–17 shall have the right to commence a civil action against the municipality to enjoin the levy or collection of the assessment or to set aside and declare unlawful the proceedings.

(2) Any such action must be commenced and summons must be served on the municipality not later than thirty days after the effective date of the ordinance levying assessments in the special improvement district. Such action shall be the exclusive remedy of any aggrieved party. No court shall entertain any complaint which the party was authorized to make but did not make in a protest filed pursuant to section 10–16–7 or at hearings held pursuant to section 10–16–17 or any complaint that does not go to the equity or justice of the assessment or proceeding.

■ Under the facts of the instant case, this action was commenced prematurely, since the only viable theory upon which plaintiffs could predicate their action would be the failure of the governing body to obtain jurisdiction to order the making of the improvements which the special assessment was intended to pay. Until the assessment has been levied, both the amount and source of the property acquisition costs are unknown. The extensive procedural process of Title 10, Chapter 16, was designed to avert the instant situation, wherein an action is initiated prior to the ascertainment of facts sufficient to determine the merits of the case. The proceedings under Sec. 10–16–7 and Sec. 10–16–17 are important procedural devices to eliminate inequities and to give the governing body an opportunity to correct errors, while preserving a subsequent action to challenge jurisdiction.

Plaintiffs urge that either course the city might pursue will be illegal. If an assessment be levied to pay the costs of aquisition, the deficiencies in the notice of intention will prevent the city from obtaining jurisdiction to levy the assessment. As previously observed, this matter may be litigated if it occurs. On the other hand, if the city uses general funds to finance the acquisition, as was expressed by the Mayor in a letter introduced in evidence, plaintiffs assert that every taxpayer and/or resident

of Bountiful must receive notice and an opportunity to protest. Under the latter circumstances, they contend that the failure to give notice constitutes a violation of due process of law, and the limitation of protest to the owners of property to be specially assessed creates an impermissible form of invidious discrimination that transgresses the rights accorded under the equal protection clause of the Fourteenth Amendment of the Constitution.[1]

 These assertions of constitutional infirmities are without merit and totally misapprehend the instant fact situation. The improvements designated in the notice of intention were of the type that Bountiful City had the authority to construct and finance, including the costs of acquisition of property from its general funds, Sec. 10–8–8, U.C.A.1953, as amended 1966. There is no statutory or constitutional right to notice or to protest the exercise of a municipality's legislative powers. Under Title 10, Chapter 16, the governing body is vested with discretion to finance all or part of a special improvement by levy of an assessment. If the improvement be of the type that is within the legislative powers of the city to expend general funds to construct, the right to notice and to protest accrues only at that point where the governing body determines that all or a part of the expense will be defrayed by special assessment on the property to be benefited within the improvement district. There is no basis to hold this statutory classification arbitrary or unreasonable. The authorities cited by plaintiffs do not support their conclusion that confining the right to protest special improvements to owners of property subject to special assessment within the district proscribes the mandate of the equal protection clause.

The judgment of the trial court is affirmed.

TUCKETT, HENRIOD, ELLETT and CROCKETT, JJ., concur.

School District, 24 Utah 2d 419, 473 P.2d 887 (1970).

---

1. See Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); Cypert v. Washington County